# U.S. District Court
## Northern District of Florida (Pensacola)
## CIVIL DOCKET FOR CASE #: 3:19-cv-00395-MCR-CJK

RUSSELL et al v. HILL'S PET NUTRITION, INC.
Assigned to: JUDGE M CASEY RODGERS
Referred to: MAGISTRATE JUDGE CHARLES J KAHN, JR
Cause: 28:1332 Diversity-Product Liability

Date Filed: 02/11/2019
Jury Demand: Plaintiff
Nature of Suit: 385 Prop. Damage Prod.
Liability
Jurisdiction: Diversity

**Plaintiff**

**MICHAEL RUSSELL**                represented by    **WILLIAM FRANKLIN CASH , III**
LEVIN PAPANTONIO THOMAS ETC PA
- PENSACOLA FL
316 S BAYLEN ST STE 600
PENSACOLA, FL 32502
850-435-7059
Fax: 850-535-7020
Email: bcash@levinlaw.com
*ATTORNEY TO BE NOTICED*

**MATTHEW DAVID SCHULTZ**
LEVIN PAPANTONIO - PENSACOLA FL
316 S BAYLEN ST - STE 600
PENSACOLA, FL 32502
850-435-7000
Fax: 850-497-7095
Email: mschultz@levinlaw.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**JODI RUSSELL**                   represented by    **WILLIAM FRANKLIN CASH , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

**MATTHEW DAVID SCHULTZ**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**HILL'S PET NUTRITION INC**

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 02/11/2019 | 1 | COMPLAINT *CLASS ACTION* against All Defendants ( Filing fee $ 400 receipt number |

| | | |
|---|---|---|
| | | AFLNDC-4402672.), filed by MICHAEL RUSSELL, JODI RUSSELL. (Attachments: # 1 Civil Cover Sheet) (SCHULTZ, MATTHEW) Modified on 2/12/2019 to correct event (MB). (Entered: 02/11/2019) |
| 02/12/2019 | 2 | DOCKET ANNOTATION BY COURT: The parties in the above-referenced case were added to the docket incorrectly and will be corrected by the clerk. Party names are to be entered in all caps and without punctuation. For future reference: Please review the procedure for adding/creating new parties in the "Style Guide for Electronic Case Filing" and/or chapter 10 of the "CM/ECF Attorney User's Guide," available at www.flnd.uscourts.gov. (MB) (Entered: 02/12/2019) |
| 02/19/2019 | 3 | NOTICE *REQUEST TO CLERK TO ISSUE SUMMONS* by JODI RUSSELL, MICHAEL RUSSELL re 1 Case Transferred Out - Divisional Transfer,, Complaint, (SCHULTZ, MATTHEW) (Entered: 02/19/2019) |
| 02/19/2019 | 4 | Summons Issued as to HILL'S PET NUTRITION INC. (MB) (Entered: 02/19/2019) |

<table>
<tr><td colspan="3" align="center"><b>PACER Service Center</b></td></tr>
<tr><td colspan="3" align="center"><b>Transaction Receipt</b></td></tr>
<tr><td colspan="3" align="center">02/20/2019 04:47:32</td></tr>
<tr><td><b>PACER Login:</b></td><td>sr0167</td><td><b>Client Code:</b></td><td>hills</td></tr>
<tr><td><b>Description:</b></td><td>Docket Report</td><td><b>Search Criteria:</b></td><td>3:19-cv-00395-MCR-CJK</td></tr>
<tr><td><b>Billable Pages:</b></td><td>2</td><td><b>Cost:</b></td><td>0.20</td></tr>
</table>

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA

MICHAEL RUSSELL *and* JODI
RUSSELL, *individually and on behalf
of all others similarly situated*,

           Plaintiffs,

vs.

HILL'S PET NUTRITION, INC.,

           Defendant.

Case No. 3:19 cv 395

_____

# CLASS ACTION COMPLAINT
_____

Plaintiffs Michael Russell and Jodi Russell ("Plaintiffs"), individually and on behalf of all others similarly situated (the "Class," as defined below), bring this Class Action Complaint against Hill's Pet Nutrition, Inc. ("Hill's" or "Defendant") due to the death of Plaintiffs' pet dog caused by ingestion of tainted and defective canned dog food. Plaintiffs base the allegations below on personal knowledge as to matters related to, and known to, them. As to all other matters, Plaintiffs base their allegations on information and belief, through investigation of their counsel. Plaintiffs believe substantial evidentiary support exists for the allegations below, and they seek a reasonable opportunity for discovery.

1

## NATURE OF THE ACTION

1.      This is a class action lawsuit on behalf of purchasers of Defendant's

canned dog food products that caused injury, illness, and/or death to Plaintiffs' and

the Class members' household pet dogs.

2.      The canned dog food products at issue include the following products

(collectively, the "Products"):

| Product Name | SKU Number | Date Code / Lot Code |
|---|---|---|
| Hill's® Prescription Diet® c/d® Multicare Canine Chicken & Vegetable Stew 12.5oz | 3384 | 102020T10 102020T25 |
| Hill's® Prescription Diet® i/d® Canine Chicken & Vegetable Stew 12.5oz | 3389 | 102020T04 102020T10 102020T19 102020T20 |
| Hill's® Prescription Diet® i/d® Canine Chicken & Vegetable Stew 5.5oz | 3390 | 102020T11 112020T23 122020T07 |
| Hill's® Prescription Diet® z/d® Canine 5.5oz | 5403 | 102020T17 112020T22 |
| Hill's® Prescription Diet® g/d® Canine 13oz | 7006 | 112020T19 112020T20 |
| Hill's® Prescription Diet® i/d® Canine 13oz | 7008 | 092020T30 102020T07 102020T11 112020T22 112020T23 |
| Hill's® Prescription Diet® j/d® Canine 13oz | 7009 | 112020T20 |
| Hill's® Prescription Diet® k/d® Canine 13oz | 7010 | 102020T10 102020T11 |
| Hill's® Prescription Diet® w/d® Canine 13oz | 7017 | 092020T30 102020T11 102020T12 |

| Product Name | SKU Number | Date Code / Lot Code |
|---|---|---|
| Hill's® Prescription Diet® z/d® Canine 13oz | 7018 | 102020T04<br>112020T22 |
| Hill's® Prescription Diet® Metabolic + Mobility Canine Vegetable & Tuna Stew 12.5oz | 10086 | 102020T05<br>102020T26 |
| Hill's® Prescription Diet® w/d® Canine Vegetable & Chicken Stew 12.5oz | 10129 | 102020T04<br>102020T21 |
| Hill's® Prescription Diet® i/d® Low Fat Canine Rice, Vegetable & Chicken Stew 12.5oz | 10423 | 102020T17<br>102020T19<br>112020T04 |
| Hill's® Prescription Diet® Derm Defense® Canine Chicken & Vegetable Stew 12.5oz | 10509 | 102020T05 |
| Hill's® Science Diet® Adult 7+ Small & Toy Breed Chicken & Barley Entrée Dog Food 5.8oz | 4969 | 102020T18 |
| Hill's® Science Diet® Puppy Chicken & Barley Entrée 13oz | 7036 | 102020T12 |
| Hill's® Science Diet® Adult Chicken & Barley Entrée Dog Food 13oz | 7037 | 102020T13<br>102020T14<br>112020T23<br>112020T24 |
| Hill's® Science Diet® Adult Turkey & Barley Dog Food 13oz | 7038 | 102020T06 |
| Hill's® Science Diet® Adult Chicken & Beef Entrée Dog Food 13oz | 7040 | 102020T13 |
| Hill's® Science Diet® Adult Light with Liver Dog Food 13oz | 7048 | 112020T19 |
| Hill's® Science Diet® Adult 7+ Chicken & Barley Entrée Dog Food 13oz | 7055 | 092020T31<br>102020T13 |
| Hill's® Science Diet® Adult 7+ Beef & Barley Entrée Dog Food 13oz | 7056 | 092020T31<br>112020T20<br>112020T24 |
| Hill's® Science Diet® Adult 7+ Turkey & Barley Entrée 13oz | 7057 | 112020T19 |
| Hill's® Science Diet® Adult 7+ Healthy Cuisine Braised Beef, Carrots & Peas Stew dog food 12.5oz | 10452 | 102020T14<br>102020T21 |
| Hill's® Science Diet® Adult 7+ Youthful Vitality Chicken & Vegetable Stew dog food 12.5oz | 10763 | 102020T04<br>102020T05<br>112020T11 |

3

3.      Hill's is a leading North American producer of pet food products sold by retailers, veterinarians, and veterinary clinics nationwide.

4.      Hill's holds itself out as a provider of high quality, elite pet food including canned dog food.

5.      Hill's produces and sells hundreds of thousands of containers of canned dog food annually.

6.      Defendant designed, manufactured, marketed, advertised, and warranted the canned dog food Products.

7.      In conjunction with each sale, Defendant marketed, advertised, and warranted that the Products were fit for the ordinary purpose for which such goods are used, consumption by household dogs, and were free from defects.

8.      Defendant produces the canned dog food Products intending that consumers will purchase the Products, regardless of the brand or label name, place of purchase, or the location where dogs actually consume them.

9.      The canned dog food Products were intended to be placed in the stream of commerce and distributed, offered for sale, and sold to Plaintiffs and the Class members in Florida and the United States and fed to their pet dogs.

10.     As a result of the defective Products, Plaintiffs and the Class members have suffered damages including, but not limited to, the fact they have incurred substantial veterinary bills, suffered injury to and/or death of their pets, and

purchased and/or own canned dog food Products that they would not otherwise have bought had they known the Products were defective.

11.     Defendant knows and has admitted that the Products are defective and that they have caused injury, illness, and death to household pet dogs.

12.     On or about January 31, 2019, Defendant initiated a voluntary recall of the Products. (U.S. FOOD & DRUG ADMIN., *Hill's Pet Nutrition Voluntarily Recalls Select Canned Dog Food for Excessive Vitamin D* (Jan. 31, 2019), https://www.fda.gov/Safety/Recalls/ucm630232.htm.)

13.     The recall involves about 675,000 cases of canned dog food. (Kate Gibson, *Pet owners report dog deaths from recalled food on social media*, WWW.CBSNEWS.COM (updated Feb. 8, 2019 11:55 AM), https://goo.gl/G61Lgo.)

14.     Defendant knew before January 31, 2019, that the Products, or some of them, contained dangerously high levels of vitamin D.

## PARTIES

15.     Plaintiffs Michael and Jodi Russell, husband and wife, are residents of Gulf Breeze, Florida, in Santa Rosa County.

16.     Defendant Hill's Pet Nutrition, Inc., is a corporation organized under the laws of Delaware.  Defendant Hill's Pet Nutrition, Inc.'s principal place of business is located at 400 Southwest 8th Street, Topeka, Kansas 66603.

5

## JURISDICTION AND VENUE

### Jurisdiction

17.     This Court has personal jurisdiction over Defendant for reasons including but not limited to the following: Plaintiffs' claims arise out of Defendant's conduct within Florida, including but not limited to Defendant's conduct of selling the defective canned dog food Products to veterinarians and other consumers throughout Florida, including to Plaintiffs, who purchased the defective canned dog food in this district and whose losses were suffered here.

18.     This Court has original subject-matter jurisdiction over this proposed class action pursuant to the Class Action Fairness Act of 2005, Pub. L. 109-2, 119 Stat. 4 (codified in scattered sections of Title 28 of the *United States Code*), under 28 U.S.C. § 1332(d), which provides for the original jurisdiction of the federal district courts over "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and [that] is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). Because the proposed Class Plaintiffs seek to represent includes residents from throughout the United States, the Class necessarily includes citizens from States other than the States of which Defendant is a citizen, Delaware and Kansas. Further, Plaintiff alleges the matter in controversy exceeds $5,000,000.00 in the aggregate, exclusive of interest

and costs. Finally, "the number of members of all proposed plaintiff classes in the aggregate" is greater than 100. *See* 28 U.S.C. § 1332(d)(5)(B).

**Venue**

19.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred within this district.  Plaintiffs purchased the Products in this district and their household pets consumed the Products and received resulting veterinary care in this district. Numerous other Class members also purchased the Products in this district for consumption by their pets. Defendant caused the Products to be offered for sale and sold to the public, including Plaintiffs, in this district.

**SUBSTANTIVE ALLEGATIONS**

**Defendant and the Defective Pet Food Products**

20.     Hill's holds itself out to the public as a producer of safe, nutritious, and high-quality pet food, including canned dog food.

21.     Defendant's business includes manufacturing, producing, distributing, or selling dog food under various brands, including "Prescription Diet," "Science Diet," and "Ideal Balance."

22.     Defendant produces hundreds of thousands of containers of canned dog food products for sale throughout the United States each year, a substantial proportion of which are sold or offered for sale in Florida.

23.     Hill's makes numerous express warranties about the quality of its

canned dog food and its manufacturing facilities.

24.     For example, Hill's encourages consumers to "trust the Hill's

standard" and states that the company has a "proven commitment to quality and

safety." (Hill's Pet Nutrition, Inc., *Quality & Safety*, WWW.HILLSPET.COM (2019),

https://www.hillspet.com/about-us/quality-and-safety.)

25.     Defendant's website states that "[m]ore than 220 veterinarians, food

scientists, technicians and Ph.D. nutritionists at Hill's develop all of Hill's pet

foods to meet the needs of your pets." (*Id.*)

26.     Defendant's website claims:

We only accept ingredients from suppliers whose facilities meet
stringent quality standards and who are approved by Hill's.

Not only is each ingredient examined to ensure its safety, we also
analyze each product's ingredient profile for essential nutrients to
ensure your pet gets the stringent, precise formulation they need.

(*Id.*)

27.     Defendant's website also claims:

We conduct final safety checks daily on every Hill's pet food product
to help ensure the safety of your pet's food.

Additionally, all finished products are physically inspected and tested
for key nutrients prior to release to help ensure your pet gets a
consistent product bag to bag.

(*Id.*)

8

28.     Hill's intended for dog owners to believe its statements and trust that its canned dog food is of first-rate quality.

29.     Hill's has a documented history of marketing through the veterinary community. (*See* Tara Parker-Pope, *Colgate Gives Doctors Treats for Plugging Its Food Brands*, WWW.WSJ.COM (updated Nov. 3, 1997 9:06 a.m. ET), https://www.wsj.com/articles/SB878509979865406000.)

30.     Due to consumer perception the Defendant's pet food products are of high quality, they are priced at a premium compared to other pet food products. (*See id.*)

31.     As stated above, on or about January 31, 2019, Defendant initiated a voluntary recall of the Products. (U.S. FOOD & DRUG ADMIN., *Hill's Pet Nutrition Voluntarily Recalls Select Canned Dog Food for Excessive Vitamin D* (Jan. 31, 2019), https://www.fda.gov/Safety/Recalls/ucm630232.htm.)

32.     Notices of the recall posted to Defendant's Facebook and Twitter pages were overwhelmed with replies from distressed pet owners, many of whom claimed their dogs had gotten extremely sick or died after consuming the food. (Michael Brice-Saddler, *A dog food company recalled its products, but these grieving pet owners say it's too late*, WASHINGTONPOST.COM (Feb. 4, 2019), https://goo.gl/bfbcx2.) Some of the distressed pet owners said their vets had prescribed Defendant's Products to them. (*Id.*) Others said they had paid thousands

in medical bills as a result of the accompanying illness. (*Id.*; *see also* Hill's Pet Nutrition, FACEBOOK.COM (Jan. 31, 2019 8:42 AM), https://goo.gl/t2J9X2; Hill's Pet Nutrition, TWITTER.COM (Jan. 31. 2019 8:43 AM), https://twitter.com/HillsPet.)

33.     The defective canned dog food Products contain elevated levels of vitamin D.

34.     Excessive vitamin D intake can poison dogs and cause them to experience serious health issues and death.

35.     Excessive vitamin D intake by a dog increases calcium, which is harmful to dogs' kidneys.

36.     Symptoms of excessive vitamin D intake by a dog may include:

- vomiting,
- weakness,
- depression,
- loss of appetite,
- increased thirst (polydipsia),
- increased urination (polyuria),
- dark tarry feces containing blood,
- blood in vomit,
- loss of weight,
- constipation,
- seizures,
- muscle tremors,
- abdominal pain,
- excessive drooling, and
- joint issues.

37.     Vitamin D toxicity is an emergency that requires immediate treatment and hospitalization.

10

38.     Treating dogs with vitamin D toxicity is an expensive and laborious process often involving prolonged hospitalization.

39.     Because Defendant's recall involves about 675,000 cases of canned dog food, Plaintiffs believe Defendant has sold hundreds of thousands of defective Products nationwide.

40.     Defendant manufactured, marketed, advertised, warranted, and sold, either directly or through its authorized distribution channels, the Products that caused Plaintiffs' and the Class members' damages. Plaintiffs and the Class have been or will be forced to pay for damage caused by the defect in the Products.

### Factual Allegations Related to Plaintiffs

41.     Plaintiffs' dog Stella—a dachshund—was a rescue dog Plaintiffs adopted in Gainesville, Florida.

42.     Plaintiffs have eight rescue dogs other than Stella.

43.     Prior to ingesting the defective canned dog food Product, Stella was in good health and had normal blood work, including normal renal function.

44.     On January 10, 2019, Stella had stomach problems, and Mr. Russell thought she was dehydrated. Mr. Russell took Stella to their family's veterinarian, who said Stella had pancreatitis. Stella stayed with the vet for two days and was discharged on January 12, 2019.

45.    The veterinarian performed blood work (which showed normal renal function) and said Stella needed prescription dog food, which the vet already had been feeding Stella during her stay.

46.    Plaintiffs paid $17.22 for six cans of Hill's Prescription Diet i/d Canine 13oz.

47.    Plaintiffs hand-fed Stella 1-2 tablespoons of Hill's Prescription Diet i/d Canine every two hours to start with and then 2-3 tablespoons every two hours thereafter.  Plaintiffs fed her all six cans. Plaintiffs did not keep the cans because they were unaware the food was defective and would cause Stella's death.

48.    None of Plaintiffs' other eight rescue dogs ate any of the Hill's food.

49.    Stella eventually stopped eating. She had frequent urination, vomiting, excessive thirst, and seemed disoriented.

50.    On January 26, 2019, Plaintiffs returned Stella to their vet, who ran a blood panel and called Plaintiffs to ask whether there was any chance Stella had been poisoned.  The veterinarian advised that Stella had extremely high vitamin D levels; that she was in total kidney failure; that she was suffering; and that she would need to be euthanized.

51.    Stella was euthanized on January 26, 2019, due to acute renal failure.

52.    As set forth above, on or about January 31, 2019, Defendant announced the recall of the canned dog food Products.

53. Plaintiffs first became aware of the recall after Stella's death when Mrs. Russell saw a newscast about the recall and realized the connection between Stella ingesting the Product, her physical symptoms, and her ultimate kidney failure and death.

54. Defendant notified the Plaintiffs' veterinarian's office of the recall on February 5, 2019.

55. Mr. Russell spoke with the family vet on February 8, 2019, and was advised that, in the veterinarian's opinion, ingestion of the Product was most likely the cause of Stella's kidney failure. The veterinarian pointed out that the blood work performed before Stella ingested the Product showed normal renal function; but after ingesting the Product over many days Stella went into renal failure.

56. Prior to the recall, Defendant never warned Plaintiffs or any other Class members that the Products would cause their dogs to have health problems.

57. Prior to the recall, Defendant never warned veterinarians that the Products would cause dogs to have health problems.

58. The Food and Drug Administration has posted recalls for dog food with elevated, or potentially elevated, levels of vitamin D from at least eight other brands, since early November, 2018. (Kate Gibson, *Pet owners report dog deaths from recalled food on social media*, WWW.CBSNEWS.COM (updated Feb. 8, 2019 11:55 AM), https://goo.gl/G61Lgo.)

13

59.     The eight other brands share a common contract manufacturer with Defendant. (*Id.*)

60.     Defendant knew or should have known about the risks of injury, illness, or death posed by the defective Products before Plaintiffs fed the Products to their dog.

61.     As a result of their purchases of the Products, as set forth above, Plaintiffs and the Class members have suffered and will suffer damages, including consequential and incidental damages, such as the loss and disability of their household pets; costs of purchasing the defective Products; costs of replacing the defective Products with a safe pet food (including sales tax or similar taxes); incidental transaction costs associated with purchasing safe, non-contaminated pet food and/or in securing a refund for the Product; and all costs associated with obtaining veterinary care for pets who ingested the defective Product including in some instances, the cost of euthanizing their pets.

## CLASS ACTION ALLEGATIONS

62.     Pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure, Plaintiffs bring this action on behalf of a proposed class defined as follows:

> **The Injunctive Relief Class.** All persons in the United States who purchased, or incurred damages by using, the Products.

Plaintiffs ask the Court to adjudicate only liability, declaratory relief, and injunctive relief through the Injunctive Relief Class. The Injunctive Relief Class does not seek any form of monetary relief.

Excluded from the Injunctive Relief Class are: (a) Defendant, Defendant's board members, executive-level officers, and attorneys, and immediately family members of any of the foregoing persons; (b) governmental entities; (c) the Court, the Court's immediate family, and the Court staff; and (d) any person that timely and properly excludes himself or herself from the Class in accordance with Court-approved procedures.

63.     Additionally, pursuant to Rule 23(a) and (b)(3), Plaintiffs bring this

action on behalf of a proposed class defined as follows:

**The Monetary Relief Class.** All persons in the United States who purchased, or incurred damages by using, the Products.

Plaintiffs ask the Court to adjudicate all remedies through the Monetary Relief Class.

Excluded from the Monetary Relief Class are: (a) Defendant, Defendant's board members, executive-level officers, and attorneys, and immediately family members of any of the foregoing persons; (b) governmental entities; (c) the Court, the Court's immediate family, and the Court staff; and (d) any person that timely and properly excludes himself or herself from the Class in accordance with Court-approved procedures.

64.     Additionally, pursuant to Rule 23(a) and (b)(3), Plaintiffs bring this

action on behalf of a proposed subclass defined as follows:

**The Florida Subclass.** All persons in Florida who purchased, or incurred damages by using, the Products.

Plaintiffs ask the Court to adjudicate all remedies through the Monetary Relief Class.

Excluded from the Monetary Relief Class are: (a) Defendant, Defendant's board members, executive-level officers, and attorneys, and immediately family members of any of the foregoing persons; (b) governmental entities; (c) the Court, the Court's immediate family, and the Court staff; and (d) any person that timely and properly excludes himself or herself from the Class in accordance with Court-approved procedures.

65.     Collectively, the Injunctive Relief Class, the Monetary Relief Class, and the Florida Subclass are the "Class."

66.     Plaintiffs reserve the right to alter the Class definitions as they deem necessary at any time to the full extent that the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Northern District of Florida, and applicable precedent allow.

67.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of the claims on a class-wide basis using the same evidence as individual Class members would use to prove those elements in individual actions alleging the same claims.

68.     <u>Numerosity; Rule 23(a)(1)</u>: The size of the Class is so large that joinder of all Class members is impracticable. Due to the nature of Defendant's business and the size of recent recall (about 675,000 cases of the Products), Plaintiffs believe there are hundreds or thousands of Class members geographically dispersed throughout the United States.

69.     Existence and Predominance of Common Questions of Law and Fact;

Rule 23(a)(2), (b)(3): There are questions of law and fact common to the Class.

These questions predominate over any questions affect only individual Class

members. Common legal and factual questions include but are not limited to:

a.     whether Defendant sold pet food Products that were recalled or subject to a recall;

b.     whether Defendant advertised, represented, or held itself out as producing or manufacturing pet food Products that were safe for pets to consume;

c.     whether Defendant expressly warranted the Products;

d.     whether Defendant purported to disclaim any express warranty;

e.     whether Defendant purported to disclaim any implied warranty;

f.     whether any limitation on warranty fails to meet its essential purpose;

g.     whether Defendant intended for Plaintiff, the Class members, and others to purchase the Products;

h.     whether Defendant intended or foresaw that Plaintiff, the Class members, and others would feed the Products to their pets;

i.     whether Defendant recalled the pet food Products;

j.     whether and in what manner Defendant was negligent in manufacturing or processing the Products;

k.     whether using the Products as intended (to feed pets) resulted in injury or damages to the Class members;

l.     whether Defendant's negligence proximately caused loss, injury, or damages to the Class members;

> m.   whether the Class members suffered direct losses or damages;
>
> n.   whether the Class members suffered indirect losses or damages;
>
> o.   whether the Class members are entitled to actual or other forms of damages and other monetary relief; and
>
> p.   whether the Class members are entitled to equitable relief, including but not limited to injunctive relief and equitable restitution.

70.     Defendant engaged in a common course of conduct in contravention of the laws Plaintiffs seek to enforce individually and on behalf of the Class members. Similar or identical violations of law, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action. Moreover, the common questions will yield common answers that will substantially advance the resolution of the case.

71.     <u>Typicality; Rule 23(a)(3)</u>: Plaintiffs' claims are typical of the claims of the Class members because Defendant injured all Class members through the uniform misconduct described herein; all Class members suffered injury due to Defendant's defective canned dog food Products; and Plaintiffs seek the same relief as the Class members.

72.     Furthermore, there are no defenses available to Defendant that are unique to Plaintiffs.

73. <u>Adequacy of Representation; Rule 23(a)(4)</u>: Plaintiffs are fair and adequate representatives of the Class because Plaintiffs' interests do not conflict with the Class members' interests. Plaintiffs will prosecute this action vigorously and are highly motivated to seek redress against Defendant. Furthermore, Plaintiffs have selected competent counsel that are experienced in class action and other complex litigation. Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the Class and have the resources to do so.

74. <u>Injunctive or Declaratory Relief; Rule 23(b)(2)</u>: The requirements for maintaining a class action pursuant to Rule 23(b)(2) are met, as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

75. <u>Superiority; Rule 23(b)(3)</u>: The class action mechanism is superior to other available means for the fair and efficient adjudication of this controversy for reasons including but not limited to the following:

    a.    The damages individual Class members suffered are small compared to the burden and expense of individual prosecution of the complex and extensive litigation needed to address Defendant's conduct.

    b.    Further, it would be virtually impossible for the Class members individually to redress effectively the wrongs done to them. Even if Class members themselves could afford such individual litigation, the court system could not. Individualized litigation would unnecessarily increase the delay and expense to all

19

parties and to the court system and presents a potential for inconsistent or contradictory rulings and judgments. By contrast, the class action device presents far fewer management difficulties, allows the hearing of claims which might otherwise go unaddressed because of the relative expense of bringing individual lawsuits, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

c.     The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for Defendant.

d.     The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications or that would substantively impair or impede their ability to protect their interests.

76.     <u>Notice</u>: Plaintiffs and their counsel anticipate that notice to the proposed Class will be effectuated through recognized, Court-approved notice dissemination methods, which may include United States mail, electronic mail, Internet postings, and/or published notice.

## **CLAIMS**

### **COUNT I: Breach of Implied Warranty on Behalf of the Class**

77.     Plaintiffs reallege and incorporate by reference ¶¶ 20-76 above.

78.     Plaintiffs bring this claim for breach of implied warranty against Defendant on behalf of the Class, all of whom were reasonably foreseeable users of the Products.

79. Defendant manufactured, marketed, sold, and distributed the Products.

80. At the time Defendant marketed, sold, and distributed the Products, Defendant knew of the purpose for which the Products were intended and impliedly warranted that the Products were of merchantable quality and safe and fit for such use.

81. Plaintiffs and the Class members reasonably relied upon the skill, superior knowledge, and judgment of Defendant as to whether the Products were of merchantable quality and safe and fit for their intended use.

82. Plaintiffs and the Class members could not have known about the risks associated with the Products until after ingestion by their pets.

83. Contrary to Defendant's implied warranty, the Products were not of merchantable quality and were not safe or fit for their intended use.

84. As a direct and proximate result of Defendant's breach of implied warranty, Plaintiffs and the Class members suffered damages as alleged herein.

85. Therefore, Plaintiffs pray for relief as set forth below.

**COUNT II: Breach of Express Warranty on Behalf of the Class**

86. Plaintiffs reallege and incorporate by reference ¶¶ 20-76 above.

87. Plaintiffs bring this claim for breach of express warranty against Defendant on behalf of the Class.

88. Defendant expressly warranted to Plaintiffs and the Class members that the Products were safe for consumption by pets.

89. The Products did not conform to these express representations because the Products are not safe and cause serious side effects in dogs, including illness and death.

90. As a direct and proximate result of Defendant's breaches of its express warranties to Plaintiffs and the Class members, and as the direct and legal result of the defect condition of the Products as manufactured and/or supplied by Defendant, and other wrongdoing of Defendant described herein, Plaintiffs and the Class members suffered damages.

91. Therefore, Plaintiffs pray for relief as set forth below.

### COUNT III: Negligence on Behalf of the Class

92. Plaintiffs reallege and incorporate by reference ¶¶ 20-76 above.

93. Plaintiffs bring this claim for negligence against Defendant on behalf of the Class.

94. Plaintiffs and the Class, as dog owners, were within the foreseeable zone of risk of injury or other losses in the event Defendants Products were defective or contaminated or otherwise negligently formulated, manufactured or produced, which risks Defendant knew or should have known.

95.     Defendant owed Plaintiffs and the Class members a duty to offer only safe, non-contaminated products for consumption by Plaintiffs' and the Class members' household pets.

96.     Through its failure to exercise due care, Defendant breached this duty by producing, processing, manufacturing, and offering for sale the Products in a defective condition that was unhealthy and injurious to Plaintiffs' and the Class members' pets.

97.     Additionally, Defendant breached its duty of care to Plaintiffs and the Class members by failing to use sufficient quality control, perform adequate testing, proper manufacturing, production, or processing, and by failing to take sufficient measures to prevent the Products from being offered for sale, sold, or fed to pets.

98.     Defendant knew, or in the exercise of reasonable care should have known, that the Products presented an unacceptable risk of harm to the pets of Plaintiffs and the Class members and would result in damage that was foreseeable and reasonably avoidable.

99.     As a direct and proximate result of Defendant's negligence, Plaintiffs and the Class members have suffered loss and damages.

100.    Therefore, Plaintiffs pray for relief as set forth below.

## COUNT IV:  Strict Product Liability on Behalf of the Class
### (Design Defect)

101.   Plaintiffs reallege and incorporate by reference ¶¶ 20-76 above.

102.   Plaintiffs bring this claim for strict product liability design defect against Defendant on behalf of the Class.

103.   Defendant is the producer, manufacturer, and/or distributor of the Products.

104.   Defendant's Products left Defendant's possession in an unreasonably dangerous condition.

105.   Defendant's products reached Plaintiffs and the Class members without substantial change in condition, as expected.

106.   The Products, which, among other potential defects, contained toxic levels of vitamin D, were in an unreasonably dangerous condition because (a) they failed to perform as safely as an ordinary consumer would expect when used as intended or when used in a manner reasonably foreseeable to Defendant; and (b) because the foreseeable risks of using the Products outweighed the benefits of their use.

107.   Plaintiffs and the Class members used the products as intended and in a manner reasonably foreseeable to Defendant.

108.    As the direct and foreseeable result of the defective condition of the Products as produced, manufactured, and/or distributed by Defendant, Plaintiffs and the Class members suffered damages.

109.    Therefore, Plaintiffs pray for relief as set forth below.

### COUNT V:  Strict Product Liability on Behalf of the Class
### (Manufacturing Defect)

110.    Plaintiffs reallege and incorporate by reference ¶¶ 20-76 above.

111.    Plaintiffs bring this claim for strict product liability (manufacturing defect) against Defendant on behalf of the Class.

112.    Defendant is the producer, manufacturer, and/or distributor of the Products.

113.    Defendant's Products left Defendant's possession in an unreasonably dangerous condition.

114.    Defendant's products reached Plaintiffs and the Class members without substantial change in condition, as expected.

115.    The Products were unreasonably dangerous because they were different from their intended design and failed to perform as safely as the intended design would have performed.

116.    The Products failed to perform as safely as their intended design because, among other potential defects, the Products contained toxic levels of vitamin D.

117. Plaintiffs and the Class members used the products as intended and in a manner reasonably foreseeable to Defendant.

118. As the direct and foreseeable result of the defective condition of the Products as manufactured, Plaintiffs and the Class members suffered damages.

119. Therefore, Plaintiffs pray for relief as set forth below.

**COUNT VI:  Strict Product Liability on Behalf of the Class (Failure to Warn)**

120. Plaintiffs reallege and incorporate by reference ¶¶ 20-76 above.

121. Plaintiffs bring this claim for strict product liability against Defendant on behalf of the Class.

122. Defendant is the producer, manufacturer, and/or distributor of the Products.

123. The foreseeable risks of harm from the Products could have been reduced or avoided had Defendant provided reasonable and timely instructions or warnings.

124. Defendant's failure to provide reasonable and timely instructions or warnings rendered the Products unreasonably dangerous.

125. As the direct and foreseeable result of the Defendant's failure to provide reasonable and timely instructions or warnings, thus rendering the Products defective, Plaintiffs and the Class members suffered damages.

126. Therefore, Plaintiffs pray for relief as set forth below.

**COUNT VII: Negligent Failure to Warn On Behalf of the Class**

127. Plaintiffs reallege and incorporate by reference ¶¶ 20-76 above.

128. Plaintiffs bring this claim for negligence against Defendant on behalf of the Class.

129. At all times relevant to this Complaint, Plaintiffs and the Class, as dog owners, were within the foreseeable zone of risk of injury or other losses if Defendant failed to give appropriate warnings of the particular risks of using the Products, which risks Defendant knew or should have known.

130. Defendant owed Plaintiffs and the Class members a duty to give appropriate warnings of the particular risks of using the Products, which risks Defendant knew or should have known.

131. Defendant breached this duty by failing to warn of the risks particular to the Products, including the risk of toxicity to Plaintiffs' and the Class members' pets.

132. As the direct and foreseeable result of the Defendant's negligent failure to give these appropriate warnings, Plaintiffs and the Class members suffered damages.

133. Therefore, Plaintiffs pray for relief as set forth below.

**COUNT VIII: Deceptive & Unfair Trade Practices On Behalf of the Class**

134.   Plaintiffs reallege and incorporate by reference ¶¶ 20-76 above.

135.   Plaintiffs bring this claim for deceptive and unfair trade practices against Defendant on behalf of the Class.

136.   Defendants have engaged in deceptive acts and unfair practices that have caused actual damages to Plaintiffs and the Class.

137.   Section 501.204(1), Fla. Stat., makes unlawful "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

138.   Selling, distributing, and introducing the Products in interstate commerce are "consumer transaction[s]" within the meaning and scope of the Florida Deceptive and Unfair Trade Practices Act. (FDUTPA).

139.   Plaintiffs and the Class members are "consumers" as defined by § 501.203, Fla. Stat.

140.   The Products are goods within the meaning and scope of FDUTPA and Defendant is engaged in trade or commerce within the meaning and scope of FDUTPA in connection with the sale and distribution of the Products.

141.   Defendants have violated FDUTPA by engaging in the deceptive acts and unfair practices described above and incorporated into this count, which are unconscionable and injurious to consumers, and which include Defendant's failure

to properly test and inspect the Products before releasing them into the stream of commerce and Defendant's failure to provide adequate, appropriate or timely warnings of the dangers posed by the Products.

142.    An objectively reasonable person would have been deceived by Defendants' acts and unfair practices.

143.    Plaintiff and the Class have sustained actual damages as a result of Defendants' deceptive acts and unfair practices, which violate FDUTPA. Damages include at least those identified in ¶ 61 above.

144.    Pursuant to §§501.211(2) and 501.2105, Fla. Stat., Plaintiffs and the Class demand damages, attorneys' fees and costs, and any other equitable and legal relief to which they may be entitled.

145.    Plaintiff's claims under FDUTPA are representative of similar claims available to non-Florida Class members under the laws of other states, which also are amenable to further sub-class treatment, particularly where the counterpart laws require no showing of reliance or, like Florida, employ an objective reliance standard.  Such laws may include, but are not limited to: Ala. Code §§ 8-19-1 et seq.; Alaska Stat. § 45.50.471; Ariz. Rev. Stat. Ann. §§ 44-1521 et seq.; Ark. Code Ann. § 4-8-01, et seq.; Cal. Civil Code §§ 1770 et seq. and Cal. Bus. & Prof. Code §§ 17200 et seq.; Colo. Rev. Stat. §§ 6-1-05 et seq.; Conn. Gen. Stat. Ann. §§ 42-110a et seq.; Del. Code Ann. Tit. 6 §§ 2511 et seq. & 2531 et seq.; D.C. Code Ann.

§§ 28-3901 et seq.; Ga. Code Ann. §§ 10-1-372 and 10-1-420; Haw. Rev. Stat. §§ 480-1 et seq.; Idaho Code §§ 48-601 et seq.; 815 Ill. Comp. Stat. 505/1 et seq.; Ind. Code Ann. 24-5-0.5-3; Iowa Code § 714.16; Kan. Stat. Ann. §§ 50-623 et seq.; Ky. Rev. Stat. Ann. § 367.170; La. R.S. §§ 1401 et seq.; Me. Rev. Stat. Ann tit. 5, §§ 205-A et seq.; Md. Code Ann., Com. Law §§ 13-301 et seq.; Mass. Ge. Laws ch. 93A, §§ 1 et seq.; Mich. Comp. Laws Ann. §§ 445.901 et seq.; Minn. Stat. §§ 325D.44 et seq.; Miss. Code Ann. §§ 75-24-1 et seq.; Mo. Ann. Stat. §§ 407.010 et seq.; Mont. Code Ann. §§ 30-14-101 et seq.; Neb. Rev. Stat. Ann. §§ 59-1601 et seq.; Nev. Rev. Stat. Ann. §§ 598.0903 et seq.; N.H. Rev. Stat. Ann. §§ 358-A:1 et seq.; N.J. Stat. Ann. §§ 56:8-1 et seq.; N.M. Stat. Ann. §§ 57-12-1 et seq.; N.Y. Gen. Bus. Law §§ 349 et seq. and 350-e et seq.; N.C. Gen. Stat. §§ 75-1 et seq.; N.D. Cent. Code §§ 51-12-01 et seq. and 51-15-01 et seq.; Ohio Rev. Code Ann. §§ 1345.01 et seq.; Okla Stat. Ann. Tit. 15, §§ 751 et seq.; Or. Rev. Stat. §§ 646.605 et seq.; 73 Pa. Cons. Stat. §§ 201-1 et seq.; R.I. Gen. Laws §§ 6-13.1-1 et seq.; S.C. Code Ann. §§ 39-5-10 et seq.; S.D. Codified Laws §§ 37-24-1 et seq.; Tenn. Code Ann. § 47-18-109(a)(1); Tex. Bus. & Com. Code Ann. §§ 17.41 et seq.; Utah Code Ann. §§ 13-11-1 et seq.; Vt. Stat. Ann. Tit. 9, §§ 2453 et seq.; Va. Code Ann. §§ 59.1-196 et seq.; Wash Rev. Code Ann. §§ 19.86.010 et seq.; W. Va. Code 46A-6-101 et seq.; Wis. Stat. Ann. § 100.18; and Wyo. Stat. Ann. §§ 40-12-101 et seq.

146.   Therefore, Plaintiffs pray for relief as set forth below.

## COUNT IX:  Unjust Enrichment On Behalf of the Class

147.   Plaintiffs reallege and incorporate by reference ¶¶ 20-76 above.

148.   Plaintiffs bring this claim for unjust enrichment against Defendant on behalf of the Class.

149.   As a direct, proximate, and foreseeable result of Defendant's acts and otherwise wrongful conduct, Plaintiffs and the Class members conferred a benefit on Defendant and consequently suffered damages. Defendant profited and benefited from the sale of the Products, even as the Products caused Plaintiffs and the Class members to incur damages.

150.   Defendant voluntarily accepted and retained these profits and benefits, derived from Plaintiffs and the Class members, with full knowledge and awareness that as a result of Defendant's wrongdoing, consumers including Plaintiffs and the Class members were not receiving Products of the quality, nature, fitness, or value that had been represented by Defendant or that reasonable consumers expected. Plaintiffs and the Class members purchased pet food that they expected would be safe and healthy for their pets and instead have now had to endure the serious injury, illness, hospitalization, and/or death of their beloved pets.

151.   Defendant continues to possess monies paid by Plaintiffs and the

31

Class members to which Defendant is not entitled.

152.   Under the circumstances it would be inequitable for Defendants to retain the benefits conferred upon it and Defendant's retention of these benefits violates fundamental principles of justice, equity, and good conscience.

153.   Plaintiffs and the Class members hereby seek the disgorgement and restitution of Defendant's wrongful profits, revenue, and benefits, to the extent, and in the amount, deemed appropriate by the Court, and such other relief as the Court deems just and proper to remedy Defendant's unjust enrichment.

154.   Therefore, Plaintiffs pray for relief as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the members of the Class, respectfully request the Court to enter an Order:

A.   certifying the proposed Class under Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3), as set forth above;

B.   declaring that Defendant is financially responsible for notifying the Class members of the pendency of this suit;

C.   declaring that Defendant has committed the violations of law alleged herein;

D.   providing for any and all injunctive relief the Court deems

appropriate;

      E.    awarding monetary damages, including but not limited to any compensatory, incidental, or consequential damages in an amount that the Court or jury will determine, in accordance with applicable law;

      F.    providing for any and all equitable monetary relief the Court deems appropriate;

      G.    awarding punitive or exemplary damages in accordance with proof and in an amount consistent with applicable precedent;

      H.    awarding Plaintiffs their reasonable costs and expenses of suit, including attorneys' fees;

      I.    awarding pre- and post-judgment interest to the extent the law allows; and

      J.    providing such further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

      Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury on all claims so triable.

Date: February 11, 2019           Respectfully submitted,

By:  */s/ Matthew D. Schultz*
Matthew D. Schultz (FBN 640328)
*mschultz@levinlaw.com*
William F. Cash, III (FBN 68443)
*bcash@levinlaw.com*
**LEVIN, PAPANTONIO, THOMAS, MITCHELL, RAFFERTY & PROCTOR, P.A.**
316 South Baylen Street, Suite 600
Pensacola, Florida  32503
Telephone: (850) 435-7140
Facsimile: (850) 436-6140

Michael R. Reese (*pro hac vice* to be filed)
*mreese@reesellp.com*
George V. Granade (*pro hac vice* to be filed)
*ggranade@reesellp.com*
**REESE LLP**
100 West 93rd Street, 16th Floor
New York, New York  10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

*Counsel for Plaintiffs and the Proposed Class*