BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| In re: HILL'S PET NUTRITION, INC. DOG FOOD PRODUCTS LIABILITY LITIGATION | MDL No. 2887 |

**INTERESTED PARTY STATEMENT OF PLAINTIFF CAROLE REED
IN SUPPORT OF TRANSFER TO THE EASTERN DISTRICT OF NEW YORK**

Plaintiff Carole Reed (Plaintiff), by her attorneys and pursuant to 28 U.S.C. § 1407, respectfully joins in the request that the Panel centralize this matter and requests centralization in the Eastern District of New York ("E.D.N.Y.") before the Honorable LaShann DeArcy Hall.

E.D.N.Y. is the appropriate transferee forum here. A key Defendant in this matter, Colgate-Palmolive Company ("Colgate"), is headquartered in New York City. Colgate is the parent company of Hill's Pet Nutrition, Inc. and other related entities ("Hill's"). Colgate is a hands-on parent to Hill's, referring to Hill's as one of its brands. Based upon the control Colgate had over the matters central to these Actions, New York City is a "nerve center" of activity germane to the issues raised here. Specifically, as described herein, Colgate's own publicly available documents reveal that it exercises substantial control and influence over the contracting for and procurement of raw ingredients (such as the vitamin premix at issue in this matter), and the manufacture, distribution, advertising and marketing of Hill's "Science Diet" and/or "Prescription Diet" wet dog food that have been recalled due to containing dangerous and toxic levels of Vitamin D (the "Recalled Products").

Moreover, New York City is a substantially more convenient forum for the parties and their counsel on a purely logistical basis than Kansas. Indeed, counsel for Colgate and Hill's are in New York City, and Colgate as well as a substantial proportion of the Plaintiffs are located in

or relatively near New York City. E.D.N.Y. also has the judicial resources to effectively oversee the Actions, and selecting Judge Hall who has not had an MDL promotes diversity and inclusion.

Although the District of Kansas no doubt has a legitimate connection to the Actions by virtue of Hill's being headquartered there, and several parties support transfer of the Actions to Kansas,[1] the E.D.N.Y. is a more desirable transferee forum for the all the reasons expressed herein. As for the other proposed transferee forums, the Northern District of California[2] and the District of Rhode Island,[3] are only tangentially connected to the Actions by virtue of few Plaintiffs' purchases of Defendants' dog food in those Districts and, therefore, are not suitable choices.

Other related Actions have made similar requests for transfer to the E.D.N.Y., which are incorporated by reference. *See Kelly Bone, et al. v. Hill's Pet Nutrition, Inc., et al.*, Case No. 1:19-cv-00831 (E.D.N.Y.) assigned to Judge Hall ("Bone Action")[4]; and (2) *Lisette Kra v. Hill's Pet Nutrition, Inc., et al.*, Case No. 1:19-cv-1444 (E.D.N.Y.), assigned to Judge Vitaliano ("Kra Action"), and *Michael Russell and Jodi Russell v. Hill's Pet Nutrition, Inc. and Colgate-Palmolive Company*, Case No. 3:19-cv-395 (N.D. Fla.), assigned to Judge Rodgers.[5]

**I.      Centralization For Pre-Trial Activities In A Single Forum Is Appropriate.**

At present, this matter is comprised of twenty-one class actions (the "Actions") asserting statutory and common law violations against Hill's, Colgate, and other related entities

---

[1] *See* Docket Nos. 4, 9, 22, 30, 38, and 40.

[2] *See* Docket Nos. 1, 32, and 42.

[3] *See* Docket No. 41. We note that the plaintiffs in *Jubinville et al. v. Hill's Pet Nutrition, et al.*, Case No. 1:19-cv-000074 (D.R.I.) that support transfer of the Actions to the District of Rhode Island also support the E.D.N.Y. as an alternate transferee forum and advocate for the selection of Judge Hall. *See* pp. 7-8.

[4] *See* MDL Docket No. 36.

[5] *See* MDL Docket No. 35.

(collectively, the "Defendants") and requesting monetary, declaratory and/or injunctive relief related to Defendants' nationwide proliferation of Recalled Products.[6] Plaintiff agrees with both Defendants and other named plaintiffs that consolidation of the Actions into a multi-district litigation ("MDL") is appropriate because, absent consolidation in a single forum, there will be significant risk of duplicative discovery, inconsistent rulings, and waste of judicial resources and the resources of both the parties and their counsel. Each Action involves common questions of law and fact, and common Defendants insofar as each Action arises out of generally identical events and conduct. Specifically, plaintiffs generally allege that after consuming the Recalled Products, their dogs suffered from severe health issues and/or death caused by Vitamin D poisoning.

II. **The Panel Should Consolidate the Actions in the E.D.N.Y. Before Judge Hall**

    a. **Colgate is a Nerve Center of Activity Germane to the Actions**

Colgate treats Hill's as one of its brands exercising substantial control over the contracting for and procurement of the raw ingredients, and the manufacture, distribution, advertising and marketing of the Recalled Products at issue here. Because Colgate exercises direct control over Hill's as described herein, significant discovery will necessarily be centralized in New York City making consolidation of the Actions in the E.D.N.Y. most appropriate. Colgate and Hill's must realize this which is undoubtedly one reason for them selecting counsel located in New York City.

Critically, Colgate states in its 2017 Corporate Social Responsibility and Sustainability Report ("2017 Report") that it is "**a leading global consumer products company, focused on** Oral Care, Personal Care, Home Care, and **Pet Nutrition**. **Colgate manufactures and markets**

---

[6] Presently, three (3) cases have been filed in the E.D.N.Y., four (4) cases have been filed in the Northern District of California, eight (8) cases have been filed in the District of Kansas, and one (1) case each has been filed in the Eastern District of Louisiana, the District of New Jersey, the Southern District of Ohio, the Eastern District of Pennsylvania, the District of Rhode Island, and the Eastern District of Tennessee.

3

**its products under trusted brands such as** Colgate, Palmolive, Speed Stick, Lady Speed Stick, Softsoap, Irish Spring, Protex, Sorriso, Kolynos, Elmex, Tom's of Maine, Sanex, Ajax, Axion, Fabuloso, Soupline and Suavitel, as well as **Hill's Science Diet, Hill's Prescription Diet**, and Hill's Ideal Balance. 2017 Report, p. 9 (emphasis added).[7] Colgate goes on to acknowledge next to a "Hill's" brand logo that: "**The vast majority of Colgate products are manufactured in Colgate-owned facilities**. **Colgate also has an extensive supply chain consisting of thousands of suppliers of raw and packing materials, manufacturing operating supplies, capital equipment, and other goods and services**." *Id*. (emphasis added).

Significant issues common to the Actions are whether the ingredients used in the Recalled Products, specifically a vitamin premix sourced from an independent third-party supplier, contained dangerous and toxic amounts of Vitamin D and, furthermore, whether Defendants are responsible for adding such ingredients to the Recalled Products during the manufacturing process. Because Colgate owns and exercises substantial control over its manufacturing facilities, including those responsible for manufacturing the Recalled Products, and assumes responsibility for selecting and/or managing the procurement of ingredients from its suppliers, it is clear that a significant amount of discovery into Colgate's involvement in the proliferation of the Recalled Products will be required to resolve such issues. Such discovery, including the deposition of key witnesses, will be most efficiently conducted in New York City as both Colgate and its chosen defense counsel is located there.

Colgate further acknowledges that it manages all of its brands with "**Integrated marketing communications** including those addressing 'brand purpose,' ongoing consumer dialogue,

---

[7] *See* Colgate Corporate Social Responsibility and Sustainability Report 2017 at https://www.colgatepalmolive.com/content/dam/cp-sites/corporate/corporate/en_us/corp/locale-assets/pdf/Colgate_CorporateSocialResponsibility_SustainabilityReport_2017.pdf, at pages 9, 13 and 16.

consumer surveys, social media postings." *Id*., p. 13 (emphasis added). Colgate touts its uniform "CODE OF CONDUCT AND GLOBAL BUSINESS PRACTICES GUIDELINES" applicable to all employees across all brands that governs, among other things, "Advertising and Advertising Placement," "Corporate Governance" and "Product Integrity." *Id*., p. 16. Critically, Colgate's 2017 Report is also linked on Hill's website by clicking "Read More" above which it states "[a]s a Colgate-Palmolive Company, our core values are the foundation of commitment to sustainable development."[8]

Another central issue common to the Actions is whether Defendants' labeling, marketing, and advertising of the Recalled Products was designed to convince consumers that they were safer, healthier, and superior to other brands of wet dog food due to having specialized and targeted health and nutritional benefits. As shown above, Colgate requires its brand divisions, including Hill's, to comply with a uniform code of conduct mandating truth in advertising and a commitment to manufacturing safe and ethically sourced products. As such, Colgate had significant involvement in ensuring that both it and Hill's implemented safeguards to ensure that the Recalled Products would be safe for ordinary use and made with ingredients that met stringent quality assurance standards. Furthermore, Colgate would be in possession of documents pertaining to the labeling, advertising, and marketing for the Recalled Products, and Colgate was involved in the management of and response to any consumer complaints.

Colgate publishes additional reports that tout its commitment to sustainability and ethically sourced products. Under the heading "Driving Sustainability Through Our Product Categories: Pet Nutrition," Colgate's Corporate Social Responsibility and Sustainability Report 2016 ("2016

---

[8] *See* https://www.hillspet.com/about-us/our-company.

Report") states: "Hill's Pet Nutrition is working to responsibly source its ingredients […]," and under "Delivering Safe and Sustainable Ingredients," Colgate states:

> "**Product Safety and Quality**: The decisions **we make on ingredients are based on a thorough evaluation of the latest scientific evidence. When we choose an ingredient – whether to contribute to the performance of a product or to keep it safe against microorganisms – it is first prescreened by a team of Colgate scientists**. Every ingredient is assessed alone and within a formula **to ensure that nothing unexpected will occur**. Our ingredient review assesses not just what happens in our laboratories, **but also across a range of real world conditions during manufacturing, in transportation, at the store, in consumers' homes and after consumer use**.
>
> […]
>
> **We continuously monitor and evaluate the safety of our ingredients**, and we actively engage with outside experts and resources to understand emerging science and deepen our knowledge. We seek the facts so that we can make the right decisions. **Where we see opportunities regarding ingredients that are raising consumer questions, we substitute with other safe ingredients that provide the same or better benefits without sacrificing quality**. Through this ongoing effort, we no longer use or are on our way to eliminating some of the ingredients and preservative systems currently raising consumer questions.[9]

Colgate then provides a link to "Our Policy on Ingredient Safety: Earning Your Confidence for Generations, Every Day" where it states:

> Every day, millions of families around the world show their confidence in Colgate-Palmolive. They … **feed our pet foods to the dogs and cats they love**. Colgate-Palmolive began earning this confidence more than 200 years ago by offering the highest quality products, and we know the trust we've earned over generations has to be earned anew every day. **Earning your trust begins with the ingredients we choose**.[10]

As shown above, Colgate has promised consumers that its **Hill's products specifically** will be made with responsibly-sourced ingredients and that Colgate, **not Hill's acting alone without**

---

[9] *See* https://www.colgatepalmolive.com/content/dam/cp-sites/corporate/corporate/en_us/corp/locale-assets/pdf/CPSustainability_2016_Full_Report%20061417.pdf at pp. 64 and 69 (emphasis added).

[10] *See* https://www.colgatepalmolive.com/en-us/core-values/our-policies/ingredient-safety (emphasis added).

6

**oversight**, makes significant decisions regarding ingredient selection. These decisions are based on Colgate's own independent scientific analysis, which includes screening of ingredients by its own team of scientists to "ensure that nothing unexpected will occur" (such as proliferation of products containing dangerous amounts of Vitamin D that are unfit for consumption by dogs) and to "evaluate the safety of our ingredients." *Id*. To that effect, Colgate takes ownership of the entire supply chain process from ingredient selection all the way through consumers' use of the products. *Id*. By its own admission, Colgate assumes the responsibility of substituting safe ingredients, and seeks to earn consumer trust based on the ingredients it chooses. *Id*.

Based on the foregoing, Colgate clearly exercises substantial control over Hill's which militates toward centralization of the Actions in the E.D.N.Y. It is Colgate's uniform code of conduct, commitment to using ethically sourced ingredients that are independently tested by Colgate personnel, and control over the supple chain of its products that dictated how the Recalled Products were manufactured, distributed, advertised and marketed. Thus, centralizing the Actions in the E.D.N.Y. is appropriate because a substantial amount of discovery pertaining to Defendants' key personnel and documents are located at Colgate's corporate headquarters in New York City.

Moreover, although Kansas may be home to Hill's and the manufacturing facility that produced the Recalled Products, it is likely that any discoverable documents located at Hill's corporate headquarters in Topeka, Kansas are stored electronically and are equally available to Colgate in New York City for document production purposes. Furthermore, any Hill's witnesses that may be located in Kansas or elsewhere outside of New York City, including any scientists or quality assurance personnel, can easily be deposed there without significant risk to efficient adjudication of this matter if transferred to the E.D.N.Y.

### b. The E.D.N.Y. is the Most Convenient Judicial District for Consolidation

Plaintiff incorporates by reference the arguments set forth by plaintiffs in the Bone Action and Kra Action and offers additional arguments as set forth below:

- New York City is serviced by three major international airports (Newark, LaGuardia, and JFK) with numerous direct flights daily from across the country, including from Kansas City, and has an abundance of accommodation options along with a sophisticated and efficient mass transit system;

- Defendants have retained O'Melveny & Myers LLP located in New York City at 300 Park Avenue, New York, NY 10022, just a few short blocks from Colgate's headquarters at 7 Times Square, New York, NY 10036 and the primary courthouse for E.D.N.Y. in Brooklyn at 225 Cadman Plaza East, Brooklyn, NY 11201.  In fact, Defendants' counsel does not even have an office located in or near Kansas;[11]

- Notwithstaning the fact that Colgate and Defendants' counsel are located in New York City, the E.D.N.Y. is considered "a convenient and accessible forum." *See* Docket No. 36, p. 7; *citing to In re Restasis (Cyclosporine Opthalmic Emulsion) Antitrust Litig.*, 289 F. Supp. 1332, 1334 (J.P.M.L. 2018);

- The Panel prefers transfer to the forum in which the first-filed action is pending, notwithstanding the possibility that other districts may be suitable.  *See* Docket No. 36, p. 4; *citing to In re Prudential Ins. Co. of Am. SGLI/VGLI Contract Litig.*, 763 F. Supp. 2d 1374, 1375 (J.P.M.L. 2011) (noting "[w]hile either proposed transferee district could be a suitable transferee forum . . . [a]s we have previously held, it is appropriate to give the first-filed criterion some weight in selecting a transferee district") (internal citations omitted).  On February 11, 2019 the Bone Action became the first case filed nationwide;

- A substantial number of plaintiffs in the Actions are either New York residents or live either (1) on the east coast or (2) in the northeastern United States.[12]  Specifically, of the 338 named plaintiffs, 18 are residents of New York, and 106 others are located on the east coast or in the northeastern United States.  As such, 37% of plaintiffs, including their discoverable documents and witnesses, would likely suffer no significant inconvenience by centralizing the Actions in the E.D.N.Y.  This is in addition to the numerous additional plaintiffs who live in close proximity to major international airports that offer frequent and direct flights to New York City, along with several plaintiffs' counsel that are located in or near New York.  *See* Docket No. 36, p. 6; *see also* 28 U.S.C. § 1407(a) (transfers are to be

---

[11] *See* https://www.omm.com/locations/ (indicating office locations in New York City, Century City, Los Angeles, Newport Beach, San Francisco, Silicon Valley, and Washington D.C.

[12] For purposes of this filing, this includes the following states: Florida, Georgia, South Carolina, North Carolina, Virginia, Maryland, Pennsylvania, Delaware, New Jersey, New York, Connecticut, Rhode Island, Massachusetts, Vermont, New Hampshire, and Maine.

made based upon the panel's determination that they "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions").

### c. The E.D.N.Y Has Sufficient Resources and Expertise to Oversee the Actions, and Selecting Judge Hall Promotes Inclusion and Diversity

Plaintiff incorporates by reference the following arguments set forth by plaintiffs in the Bone Action and Kra Action:

- The E.D.N.Y. only has five MDLs, none of which are assigned to Judge Hall.[13] As Defendants note, JPML consistently considers whether a potential forum is "overtaxed with other [MDL] dockets." *See* Docket No. 9, p. 14; *citing In re Gator*, 259 F. Supp. at 1380; *In re Compensation of Managerial, Prof'l & Technical Employees Antitrust Litig.*, 206 F. Supp. 2d 1374, 1376 (J.P.M.L. 2002) (noting "the [transferee] judge . . . is not currently burdened with another complex Section 1407 docket");

- Judge Hall is qualified to oversee the Actions and would both efficiently and fairly adjudicate them. *See* Docket No. 36, p. 7. In addition to serving as a civil litigation attorney at several highly regarded law firms (Cravath, Swaine & Moore; Gibson, Dunn & Crutcher; and Morrison & Foerster), she served as a Commissioner on the New York State Joint Commission on Public Ethics. Judge Hall has never been assigned an MDL, and therefore the Panel "has an opportunity to assign a matter to an 'experienced and capable jurist' who 'has not yet had an MDL.'" *See Id*; *citing to In re: Loestrin 24 FE Antitrust Litigation*, MDL-2472, Master Docket # 1:13-md-02472 at p. 2; *see also* Docket No. 35, p. 8; *citing to In re TD Bank, N.A., Debit Card Overdraft Fee Litig.*, 96 F. Supp. 3d 1378, 1379 (J.P.M.L. 2015) (selecting venue in part based on argument that "centralization in this district provides us the opportunity to assign the litigation to a capable jurist who has not presided over an MDL yet"); and,

- The Panel should consider Judge Hall because her selection promotes diversity and inclusion. *See* Docket No. 35, p. 5-7. As noted by plaintiffs in the Kra Action, MDLs are impactful nationwide and are prestigious assignments for district court judges. *Id*. Despite there being 206 pending MDLs, only 17 are presided over by African-American jurists, and only two of them are women. *Id*.; citing to https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-February-15-2019.pdf.

### III. The Other Proposed Transferee Forums are Not Appropriate for Consolidation

Transfer to the District of Kansas would not serve the interests of the parties, their counsel, or the tenets of judicial economy. On pure logistical considerations, **only three named plaintiffs**

---

[13] *See* https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-February-15-2019.pdf.

**of 338 are Kansas residents** as opposed to 124 being situated in the northeast/east coast states. The courthouses serving the District of Kansas are extremely inconvenient for an MDL of this magnitude. *See* Docket No. 36, p. 6. As such, Kansas is a highly inconvenient venue for the majority of the parties and their counsel. Furthermore, as stated above, any Hill's documents in Kansas are likely stored electronically and Hill's personnel in Kansas or elsewhere can easily be deposed there if necessary. As such, the District of Kansas offers no genuine logistical advantages.

The Northern District of California is neither substantially connected to the Actions nor a convenient forum. Only 44 of the 338 named plaintiffs reside in California. Besides a few plaintiffs that filed in NDCA, there are no witnesses, documents or other discoverable information located there germane to the issues in the Actions. Thus, while competent to handle MDLs generally, the Northern District of California is only convenient for the California attorneys in this matter. All other parties and their counsel would be burdened with cross-country flights to San Francisco. For similar reasons (only three named plaintiffs and no significant connection between Defendants and the forum), the District of Rhode Island is also not an appropriate transferee forum.

### IV. Conclusion

For the reasons set forth herein, and with particular emphasis on the fact that Colgate located in New York City exercises substantial control and influence over the contracting for and procurement of raw ingredients, and the manufacture, distribution, advertising and marketing of the Recalled Products, Plaintiff respectfully requests that the Panel centralize all Actions in E.D.N.Y. and assign this matter to the Honorable LaShann DeArcy Hall.

DATED: April 26, 2019                    **FEINSTEIN DOYLE PAYNE**
                                                            **& KRAVEC, LLC**

                                                            By: */s/Joseph N. Kravec, Jr.*
                                                                  Joseph N. Kravec, Jr. (No. JK-3696)

29 Broadway, 24th Floor
New York, NY 10006-3205
Telephone:  (212) 952-0014
Email: jkravec@fdpklaw.com

 and

429 Fourth Avenue
Law & Finance Building, Suite 1300
Pittsburgh, PA 15219
Telephone: (412) 281-8400

***Counsel for Plaintiff Carole Reed***

# BEFORE THE UNITED STATES JUDICIAL PANEL
# ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| In re: HILL'S PET NUTRITION, INC. DOG FOOD PRODUCTS LIABILITY LITIGATION | MDL No. 2887 |

## PROOF OF SERVICE

In compliance with JPML Rule 4.1(a), the undersigned hereby certifies that a copy of the foregoing Interested Party Statement of Plaintiff Carole Reed in Support of Transfer to The Eastern District Of New York was electronically served on all parties who have appeared in this action via the Court's CM/ECF system on April 26, 2019.

**FEINSTEIN DOYLE PAYNE & KRAVEC, LLC**

By: */s/Joseph N. Kravec, Jr.*
Joseph N. Kravec, Jr. (No. JK-3696)

29 Broadway, 24th Floor
New York, NY 10006-3205
Telephone: (212) 952-0014
Email: jkravec@fdpklaw.com

and

429 Fourth Avenue
Law & Finance Building, Suite 1300
Pittsburgh, PA 15219
Telephone: (412) 281-8400
Facsimile: (412) 281-1007

*Counsel for Plaintiff Carole Reed*